BOWEN, Judge,
dissenting.
I dissent from the majority’s affirmance, by unpublished memorandum decision, of the appellant’s conviction for disorderly conduct, a violation of § 11-6-8 of the General Code of the City of Birmingham.
The city ordinance, in pertinent part, is identical to Ala.Code 1975, § 13A-11-7, which provides that “[a] person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, ... he ... [m]akes unreasonable noise.” (Emphasis added). The City’s evidence established that the appellant was “yelling and screaming,” on a public sidewalk in front of the Planned Parenthood of Alabama Clinic, Inc.
Part II of the majority’s memorandum opinion states:
“The appellant contends that the trial court erred in prohibiting his defense counsel, during closing argument, from arguing reasonable inferences based upon the evidence. More particularly, the appellant contends that he was not allowed to argue that his first amendment rights were violated based on the content of his speech.
“The record does not support the appellant’s contention. The record reveals that the trial judge granted a motion in limine, filed by the city prosecutor, that the content of the appellant’s speech was not at issue and therefore would not be referred to at trial. In response, the defense counsel agreed that the content of appellant’s speech would not be an issue, unless the appellant chose to testify. The record further indicates that the appellant did not testify. Therefore, the trial judge did not abuse his discretion in prohibiting the appellant from arguing inferences about the content of his speech.”
*76 I believe that the majority has mischarac-terized the appellant’s arguments, both at trial and on appeal. At trial, the City’s proof established the content of the appellant’s speech. Prosecution witness Rick Preston testified that the appellant screamed that Preston was “the biggest baby murderer of them all” and was “covered with blood.” R. 52-53.
The City’s motion in limine was not a request to exclude what the appellant screamed, but to exclude evidence or argument that what the appellant screamed was legally or morally justified. The motion sought to preclude the appellant from presenting medical or scientific testimony about “the humanity of the unborn child,” or certain defenses, such as justification, use of force in defense of another, duress, and necessity. C.R. 17-18.
Defense counsel clearly informed the court that he did not “intend to use any sort of justification defense, in this case.” R. 4. When the trial court asked defense counsel whether any of the matters raised by the City’s motion in limine would be “at issue,” defense counsel replied:
“[Defense Counsel]: No, not really, Your Honor. I would say this, that, you know, the complaint charges that he did unlawfully with intent to cause public inconvenience, annoyance, or alarm, ... make unreasonable noise. Now, I would state that since this is a specific intent crime, if you may, that it would be admissible as to what his intent in communicating was.” R. 4-5.
“Well, they’re claiming that he was [making unreasonable noise] with the intent to cause a public inconvenience, annoyance, or alarm. So, you know, that will be an issue, what was his intent.” R. 6.
The following occurred during defense counsel’s closing argument:
“[DEFENSE COUNSEL]: They’re going to have to prove beyond a reasonable doubt that the intent of Mr. Chadwick was to cause a public annoyance. If he was doing what he was doing for some other reason and he was not intending it, it is not a crime. And they have got to prove it beyond a reasonable doubt. And I don’t believe—
“[CITY ATTORNEY]: Your Honor, I’m going to object to that.
“THE COURT: I sustain the objection.
“[DEFENSE COUNSEL]: The other content that is before you is that someone was called a murderer and said blood was on your hands. Now, I think as reasonable inferences, that is relevant to what his intent was. Was he up here to cause a public inconvenience or alarm, or was he intending something else?
“[CITY ATTORNEY]: Your Honor, I object—
“THE COURT: Hold it just a moment.
“[CITY ATTORNEY]: —based on the motion we filed earlier.
“THE COURT: I agree.
“[DEFENSE COUNSEL]: If it please the Court, it goes to intent.
“THE COURT: Just a moment. Just a moment. You’ve even urged on this Court even with your charges that content has nothing to do with it, and that’s what you’re arguing.
“[DEFENSE COUNSEL]: But intent does.
“THE COURT: Leave the content alone. You’ve asked me to do that and I’ve agreed with you.” R. 103-05.
I believe that the trial court erred by sustaining the City’s objection to that portion of the appellant’s closing argument which asserted that the City, in a prosecution for this specific intent offense, had the burden of proving what the appellant’s intent was, and further, that in determining whether the City had met that burden, the jury could consider what the appellant said in order to determine his intent.
“ ‘Intent can only be shown by facts and circumstances from which the jury is authorized to draw the inference.’ Burk v. State, 22 Ala.App. 107, 108, 114 So. 71, cert. denied, 216 Ala. 655, 114 So. 72 (1927)... ‘Intent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, *77 and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.’ Pumphrey v. State, 156 Ala. 103, 47 So. 156, 157 (1908).”
McCord v. State, 501 So.2d 520, 528-29 (Ala.Cr.App.1986). “Because intent is inherently difficult to prove by direct evidence, its existence may be evidenced by the words and actions of the accused and may be inferred from all the facts and circumstances in the case.” Hinds v. State, 423 So.2d 1382, 1388 (Ala.Cr.App.1982).