The defendant was convicted of sexual abuse of his wife's 10-year-old sister, who was living with the defendant and his wife. The Court of Criminal Appeals reversed the defendant's conviction on the ground that the trial court had erred in allowing the State to present evidence that the defendant had committed another sex crime after the date of the offenses with which he was charged in this case.
The defendant, Tommie Lee Hatcher was indicted for rape in the first degree and sexual abuse in the first degree. T.M., the alleged victim in this case, was 10 years of age when she came to live with Hatcher and his wife, T.M.'s sister, in March 1987. T.M. testified that during her first night in the home of her sister and Hatcher, Hatcher came into the living room, where she was sleeping, and put his fingers in her vagina. T.M. also testified that on later occasions Hatcher raped her. Another of T.M.'s sisters, C.M., testified, over objection, that Hatcher had also raped her. Hatcher pleaded guilty in 1989 to rape in the second degree of C.M. In this case involving T.M., he was acquitted of the rape charge and was convicted on November 20, 1991, of first degree sexual abuse. On January 17, 1992, he was sentenced to seven years' imprisonment. Hatcher appealed; on September 30, 1992, the Alabama Court of Criminal Appeals issued an opinion reversing the judgment and remanding the case for a new trial. The reversal was based on the introduction of evidence regarding Hatcher's sex crime against C.M., T.M.'s sister, introduced in order to prove that Hatcher was guilty of the offense as to C.M.
We granted the State's petition for the writ of certiorari to review the holding by the Court of Criminal Appeals that the law, as established by previous decisions of this Court, made this evidence of Hatcher's collateral sexual offense inadmissible. The Court of Criminal Appeals, in making its holding, discussed this Court's opinion in Bowden v. State,538 So.2d 1226 (Ala. 1988), and agreed with the defendant's argument *Page 678 
that the principle of Bowden did not apply, because, it said, "the motive exception is not applicable to the present case, as this is not a situation involving incest":
 "Although in Bowden v. State, supra, the Alabama Supreme Court held that evidence of collateral offenses of rape or sexual abuse of one or more of a defendant's other children may be admissible to prove motive in raping the victim, who is also the defendant's child, this holding appears to have been confined to cases where the appellant is charged with the offense of incest. Thus, the Alabama Supreme Court stated, 'However, where the defendant is not charged with the offense of incest, . . . it becomes questionable whether evidence establishing that the accused raped and/or sexually abused one or more of his other children is admissible to prove his motive in raping
the victim, also his child.' [538 So.2d at 1235.] (Emphasis in original.)
 "In J.D.S. v. State, 587 So.2d 1249
(Ala.Cr.App. 1991), this motive exception was extended to apply to collateral offenses against members of a defendant's family who would fall within the statutory definition of victims of incest, even where the defendant was not charged with that crime, but rather was charged with other sex crimes. In that case, at page 1254 this court noted the separate opinion by Justice Maddox in Bowden v. State, supra, wherein he observed: 'Here, the majority seems to summarily dismiss motive as a viable exception to the general exclusionary rule "where the defendant is not charged with the offense of incest." . . . Why the extra charge of incest is necessary to allow motive to be shown puzzles me. . . .' 538 So.2d at 1239. (Emphasis in original.) However, in the present case, although the collateral offense was against the victim's sister, the relationship of the victim and her sister to the appellant, as sisters-in-law of his, could not have supported a charge of the offense of incest."
Hatcher v. State, 646 So.2d 674 (Ala.Crim.App. 1992).
The Court of Criminal Appeals has obviously interpreted the rule in Bowden to apply only in the case of incest. The State attempted to bring this case within the Bowden rule by arguing that the incest exception in Bowden should be expanded to cover situations like the present one, where the victims are two girls placed in their sister's home after the death of their mother, and that, based on these facts, the relationship of Hatcher to T.M. was transformed from "brother-in-law" to "stepfather." The State argues that the children were, in effect, Hatcher's "stepchildren" and, therefore, that Hatcher could be charged with the offense of incest under J.D.S. v.State, 587 So.2d 1249 (Ala.Crim.App. 1991), in which the Court of Criminal Appeals held that the offense of incest can be committed against a stepchild. In essence, the State argues that the offense of incest should be expanded to include any child placed in the environment of parent/child. (Petitioner's brief, p. 11.)
It seems apparent from the opinion of the Court of Criminal Appeals that in J.D.S. v. State the Court of Criminal Appeals had questioned the holding in Bowden, by noting and quoting from a dissenting opinion in the Bowden case written by the author of this opinion.
We believe that the holding in Bowden is not so restrictive as to make the evidence of the collateral sex crime inadmissible in this case. The majority in Bowden specifically stated the holding as follows:
 "It may well be, when the third party against whom the defendant is claimed to have committed a collateral sexual offense is the defendant's child, that collateral offense evidence is more relevant in proving the material 'other purpose(s)' for which it is offered in a sex crime prosecution than would be evidence of other third party offenses. This of course depends upon (1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial, and (4) the other purpose(s) for which it is offered. Thus, as previously noted, the analysis must be case by case."
Bowden, 538 So.2d at 1237-38.
A close reading of the Bowden holding shows that it states only that "[i]t may well be, when the third party against whom the *Page 679 
defendant is claimed to have committed a collateral sexual offense is the defendant's child," that the evidence of the collateral offense is admissible, and in Bowden this Court specifically said that "the analysis must be case by case." In view of the general language of Bowden, we think the principle stated in Bowden should not be limited to cases involving incest, but that it can apply to other cases on a case-by-case analysis.
Using the Bowden analysis, we first must consider the offenses charged in this case. Hatcher was charged with rape in the first degree, in violation of § 13A-6-61, Ala. Code 1975, and sexual abuse in the first degree, in violation of §13A-6-66, Ala. Code 1975. Under § 13A-6-61, "[a] male commits the crime of rape in the first degree if . . . [h]e, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old." Under § 13A-6-66, "[a] person commits the crime of sexual abuse in the first degree if . . . [h]e, being 16 years old or older, subjects another person to sexual contact who is less than 12 years old." Sexual contact is defined in § 13A-6-60(3), Ala. Code 1975, as "any touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."
Next, we must analyze "the circumstances surrounding the offenses charged and the collateral offense." T.M. testified that on the first night that she had come to live with Hatcher, he came to the mattress where she, her minor sister, and Hatcher's son were sleeping. T.M. said that Hatcher pulled her to end of the mattress and digitally penetrated her. T.M. also testified that Hatcher began having sex with her a few months later. T.M. could not recall any of the circumstances surrounding these later events. C.M. testified that while she was living with her sister and her brother-in-law the following happened to her:
 "Q. [C.M.], tell us what happened between you and Tommie Lee Hatcher in that December right before you stopped living with them?
 "A. [Hatcher] tried to force himself on me, and when I didn't let him he hit me and tried to choke me and then he had left and talk about [sic] when he come back for me to have my gown off and I didn't have it off and he took it off and then he tried to —
"Q. What did he do to you, [C.M.]?
"A. He tried to penetrate it.
 "Q. When you say penetrate, did he insert his penis into your vagina?
"A. Yes, ma'am.
 "Q. And that happened while you were living with him?
"A. Yes, ma'am."
(R. 50.)
The prosecution offered C.M.'s testimony to show motive or a common plan or scheme.
 "Motive is defined as 'an inducement, or that which leads or tempts the mind to do or commit the crime charged.' Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has also been described as 'that state of mind which works to "supply the reason that nudges the will and prods the mind to indulge the criminal intent." ' [Charles Gamble, Character Evidence: A Comprehensive Approach 42 (1987).]
 "Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067
(Ala.Crim.App. 1986). ' "It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense." McAdory v. State, 62 Ala. 154 [(1878)].' Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907
(1921)."
Bowden, 538 So.2d at 1235 (emphasis in Bowden).
The inducement in this case could have been an unnatural sexual desire for the small children living in his household. One of the elements of the offense for which Hatcher was on trial for was that he assaulted T.M. "for the purpose of gratifying the sexual desire of either party." § 13A-6-60(3). Because T.M. was only 10 years old at the time of the incident, reasonable people might conclude that the assault was not for the purpose of satisfying T.M.'s sexual desire. *Page 680 
Therefore, the testimony of C.M. should be considered as relevant to the question of Hatcher's motive, which a reasonable person could find was an intent to satisfy an unnatural sexual desire for small children. The majority inBowden recognized such a motive in cases where incest is the offense charged. 538 So.2d at 1235. The Court of Criminal Appeals notes a statement in the dissenting opinion in Bowden
questioning the relationship between relevancy and the extra charge of incest: "Why the extra charge of incest is necessary to allow motive to be shown puzzles me, because the defendant'smotive at the time of the crime does not change with a prosecutor's decision to add an incest charge or not." Id. at 1239 (Maddox, J., dissenting). It is unnatural, as well as illegal, for an adult male to seek to gratify his sexual desires by exploiting a child; therefore, C.M.'s testimony was relevant and admissible as proof of Hatcher's motive for committing the act for which he was being tried.
Based on our analysis of the circumstances of this case, we hold that the trial judge did not err in admitting the evidence and that the "probative value [of the evidence outweighed] its prejudicial effect." Ex parte Smith, 581 So.2d 531, 535
(Ala. 1991). The evidence of the collateral act against C.M. was relevant in this case to prove what the prosecution contended was Hatcher's motive, to gratify sexual desires by having sex with young girls living in his household. The testimony was clearly damaging to Hatcher, but the jury acquitted him on the rape charge and convicted him on the sexual abuse charge. We recognize the damaging nature of the testimony — there was no physical evidence of abuse; the only evidence presented by the State was C.M. and T.M.'s testimony; T.M. offered the only direct testimony that Hatcher abused her; she could not remember any details of the rapes she alleged and she could recall only that Hatcher had sex with her many times — but we conclude that it was not unduly prejudicial and that the trial court did not abuse its discretion in permitting C.M. to give that testimony.
The judgment of the Court of Criminal Appeals is reversed and the case is remanded to that court for an order or action consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
SHORES, STEAGALL, INGRAM and COOK, JJ., concur.